[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 1, 2006
THOMAS K. KAHN
CLERK

No. 05-17211
Non-Argument Calendar

_____

BIA No. A95-230-133

CAROUL CESAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 1, 2006)**

Before ANDERSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Haitian native and citizen Caroul Cesar, proceeding *pro se*, petitions for

review of the Bureau of Immigration Appeals' ("BIA") affirmation of the Immigration Judge's ("IJ") order denying his claim for asylum, 8 U.S.C. § 1158, and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c).[1]  We deny the petition for the reasons set forth below.

I.

Cesar illegally entered the United States on or about September 12, 2001, and applied for asylum.  The former Immigration and Naturalization Service initiated removal proceedings against Cesar, issuing a Notice to Appear charging him with removability as an alien present in the United States who had not been admitted or paroled.

Through his application for asylum and testimony given at his removal hearing, Cesar explained that he was born in Limonade, Haiti, and became a member of the church of Maranatha in 1991.  The church had some relation to Mochrena (*Mouvement Chretien pour Batir une Nouvelle Haiti*, or Christian Movement for a New Haiti), a political party, which, at the time Cesar emigrated

---

[1]As an initial matter, Cesar has abandoned his CAT claim by failing to argue the issue on appeal.  *Huang v. U.S. Attorney Gen.*, 429 F.3d 1002, 1007 n.2 (11th Cir. 2005).

from Haiti, was one of the largest opposition groups to the ruling Fanmi Lavalas party. Although Cesar stated in his application that he never went to a Mochrena meeting, he initially testified that he began his affiliation with the Mochrena party in 1999. He later said that he had worked for them for four or five years. He also said that he encouraged people to join the Mochrena movement and vote for Mochrena candidates, and that at the church, he "was always teaching about the elections in order to make [the people] aware that some candidates could be trouble and that certain things needed to be done." He testified, however, that he had not voted since 1991 "because the elections in Haiti are constantly replete with problems." When asked when Mochrena was founded and when the last national elections were held before he left the country, Cesar could only respond that he had forgotten many things.

Cesar testified that a May 21, 2001 meeting organized by his pastor was interrupted when the police and chimeres[2] broke down the door and threatened to kill the attendees for their opposition to the Fanmi Lavalas party. Cesar stated that he fled and never went back, explaining that opposition members threatened to kill both Cesar and his wife. Cesar spent the rest of May, June, July, and part of August living in the brush. In early August, he met his former classmate, Eddy Auguste, and was reunited with his wife. Cesar appeared to suggest that he and his

---

[2]"Chimeres" were pro-Aristide militants.

3

family spent part of the month of August with Auguste.

At some point, Cesar and his family returned home, and on September 1, 2001, seven or eight men, armed with hammers, knives, and guns, broke into Cesar's home, attacked Cesar, and raped his wife in front of their children. During the attack, Cesar was struck on the head with a hammer. He claimed that the reason for the attack was his membership in Mochrena. Cesar escaped the attack by himself and initially testified that he went to Madillian, where Auguste was living. Cesar later testified that, following the attack, he slept in the brush. Cesar subsequently explained that he stayed for one day at Auguste's house and, on September 2, was with his sister in the brush.

On September 3, two days after the attack, Cesar visited Dr. Jacques Blaise for treatment of his injuries. Cesar testified that he also left Haiti on September 3.

In support of his application, Cesar submitted a series of documents. The first was a letter from Dr. Paul Rockley, a dermatologist, which stated that Cesar reported hearing loss from being hit on the head with a hammer, and had two scars on his scalp and two scars on his right eyebrow. Cesar testified, however, that his only problem after being hit on the head was chronic headaches. Cesar submitted two certificates from Dr. Jacques Blaise, one of which stated that he treated Cesar on September 3, 2001, for injuries, including a scalp wound, and anxiety as the result of "physical aggression" by "armed individuals" "two days later." The other

4

certificate stated that Dr. Blaise also treated Cesar's wife for injuries, including ones due to sexual violence, "as a result of physical aggression two days later." Marie Pierre, a resident of Cap-Haitien, declared that she dressed Cesar's scalp wound for two weeks after he received treatment by Dr. Blaise. Cesar's wife declared that, on September 1, 2001, she was the victim of sexual violence in front of her family and was slapped in the face. Finally, Eddy Auguste declared that he accommodated Cesar's family for fifteen days after they were attacked on September 2, 2001, by "unidentified armed individuals."

The IJ denied asylum, withholding of removal, and CAT relief. The IJ found Cesar not credible, citing a number of reasons including the lack of clarity of Cesar's testimony, Cesar's general testimony about what he did for his church group, inconsistencies between Cesar's testimony and his documentary evidence, Cesar's varying explanations of what happened after the September 1, 2001 attack, and Cesar's demeanor. The IJ also found it not credible that Cesar would encourage people to vote for Mochrena candidates, but had not voted since 1991. The IJ further found that Cesar's corroborative evidence tended to undermine his asylum claim. The IJ then determined that Cesar failed to establish past persecution or a well-founded fear of persecution on a protected ground. Because Cesar could not establish asylum eligibility, the IJ concluded that he had not met the standard for withholding of removal. Finally, the IJ determined that Cesar did

5

not show that it was more likely than not that he would be tortured if returned to Haiti. The BIA affirmed without opinion.

## II.

When the BIA summarily affirms the IJ without an opinion, we review the IJ's opinion. *See Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). We review factual determinations, including credibility determinations, using the substantial evidence test. *Forgue v. U.S. Attorney Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal citation and quotation marks omitted). We review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. *Id.* "[F]indings of fact made by . . . the [Immigration Judge] may be reversed by this [C]ourt only when the record compels a reversal." *Silva v. U.S. Attorney Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (internal citation and quotation marks omitted) (alteration in original). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). To the extent the IJ's decision was based on a legal determination, review is de novo. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

6

First, Cesar argues that the district court erred in finding that he lacked credibility.[3] He contends that his head injuries likely resulted in brain damage, which accounts for his inability to describe events and their chronology with clarity, and that to the extent that he was able to testify, his testimony was credible.

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287. "The trier of fact must determine credibility, and this court may not substitute its judgment for that of the [IJ] with respect to credibility findings." *D-Muhumed v. U.S. Attorney Gen.*, 388 F.3d 814, 818 (11th Cir. 2004).

The IJ explicitly found Cesar's testimony not credible, and Cesar's argument does not demonstrate that the record compels reversal of the IJ's adverse credibility finding. There is no evidence that Cesar suffered brain damage that would interfere with his cognitive abilities. Furthermore, Cesar's descriptions of the aftereffects of his injury are inconsistent — he told Dr. Rockley that it caused hearing loss, but testified that his only problem was chronic headaches. Moreover,

---

[3]The government argues that Cesar abandoned any challenge to the IJ's adverse credibility determination because he failed to make any argument, with supporting authority, on the issue in his brief. Although Cesar's argument is limited and cites no authority, liberally construing his brief, we conclude that it is clear that he is challenging the IJ's adverse credibility determination and that Cesar did not abandon the claim. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Cesar only tries to explain the lack of clarity in his testimony and fails to make any arguments regarding the IJ's reliance on his demeanor, lack of detail, inconsistencies between his testimony and documentary evidence, or the IJ's disbelief that Cesar encouraged people to vote for Mochrena candidates, but did not himself vote.

Additionally, there are a number of inconsistencies relating to the basis of Cesar's alleged persecution. In his application, Cesar claimed that he never went to Mochrena meetings, but testified that he was at a meeting on May 21, 2001, that was broken up by the police and the chimere. He also testified inconsistently that he became affiliated with the Mochrena party in 1999 and that he worked for them for four or five years. Finally, Cesar's testimony that he saw the doctor and left Haiti on September 3, 2001, is inconsistent with Pierre's statement that she treated his wound for two weeks following his visit to the doctor. In light of the foregoing, Cesar has not met his burden of showing that the IJ's adverse credibility finding was not based on specific, cogent reasons or supported by substantial evidence, and the record does not compel reversal of the IJ's adverse credibility finding.

Second, Cesar argues that the district court erred in denying his application for asylum and withholding of removal. To establish eligibility for asylum, the alien must, with specific and credible evidence, establish (1) past persecution on

8

account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005). In the absence of past persecution, "the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." *Ruiz v. U.S. Attorney Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). We require the applicant to present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of" a protected ground. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1287 (11th Cir. 2001) (quotation marks and citation omitted).

Cesar appears to rely largely on his testimony to demonstrate past persecution. As the record does not compel reversal of the IJ's adverse credibility determination, Cesar cannot rely upon his testimony to establish persecution. Moreover, there is a serious paucity of evidence outside of his own testimony linking any injuries sustained by Cesar to a protected ground, as Cesar does not argue that the IJ erred in according no weight to Dr. Blaise's statements. There is also a problem with Cesar's documentary evidence, as Pierre could not have cared for Cesar for two weeks after his visit to Dr. Blaise if Cesar left Haiti on the same day as the doctor's visit. Although there is evidence that Lavalas supporters attacked political opponents, in the absence of credible evidence demonstrating

9

that Cesar was persecuted on a protected ground, the record does not compel a finding that Cesar established past persecution.

Cesar makes no argument, that, in the absence of past persecution, he established a well-founded fear of future persecution, and even implies that country conditions have changed such that a well-founded fear of future persecution no longer exists.[4]  Accordingly, the record does not compel a finding that Cesar established a well-founded fear of future persecution.

Finally, because Cesar cannot establish a well-founded fear of future persecution, he cannot meet the more stringent standard required for withholding of removal under the INA.  *Forgue*, 401 F.3d at 1288 n.4; *Al Najjar*, 257 F.3d at 1292-93.

Accordingly, we DENY the petition.

PETITION DENIED.

---

[4] Numerous articles and reports in the administrative record documented the political instability and violence in Haiti arising from the 2000 elections, which continued into 2004, eventually evolving into a rebellion against the Aristide government.  By February 24, 2004, armed rebels had taken over Cap-Haitien and other towns, and planned to march on the capital, Port-au-Prince.